MR. JUSTICE KELLEY
delivered the opinion of the Court.
This is an original proceeding in which the petitioners seek relief in the nature of prohibition. We issued a rule to show cause, the respondent has answered and we now make the rule absolute. The petitioners herein are Raymond Leidig, Executive Director of the Colorado Department of Institutions; Gerald Agee, Chief of the Division of Youth Services of the Colorado Department of Institutions; and Gail Colvin, Director of the Adams County Juvenile Detention Center. The respondent herein is the Honorable James Delaney, Judge of the District Court of Adams County.
In December, 1970, S. D. (the juvenile) was adjudged to be a child in need of supervision, based upon his having committed the offenses of shoplifting, truancy, and misconduct in school. He was placed on probation for one year. On April 13, 1971, slightly more than four months later, he was placed in detention for auto theft.
During the next four years the juvenile committed numerous serious offenses which resulted in successive commitments to the Department of Institutions. On two such occasions the Department of Institutions placed the juvenile in the Lookout Mountain School for Boys. On the last occasion he was there from August 15, 1972, until the end of May, 1974, when he was returned to the community.
The Juvenile was again immediately taken into custody, June 5, 1974, for three joyriding offenses in Adams County; two burglaries, three joyriding offenses and one robbery in Aspen, Pitkin County; and one theft offense in Georgetown, Clear Creek County. On August 22, 1974, the juvenile was committed by the court to the custody of the Adams County Department of Social Services for placement at Jefferson Hall. Within two days he ran away and stole an automobile and was rearrested. He remained in jail until October 29, 1974, when he was adjudged a delinquent and committed to the Colorado Department of Institutions. He was again sent to the Lookout Mountain School for Boys.
It is not clear from the record how long he remained at the Lookout Mountain facility nor whether he was released or escaped. It does appear, however, that on January 18, 1975, the juvenile was apprehended in Hugo, Colorado, in the possession of a stolen automobile.
*188 On February 7, 1975, the respondent court held a dispositional hearing. In its order of disposition the court recounted the discouraging behavioral history of the juvenile, noted the failure of corrective results from the exposure to the rehabilitation programs at the Lookout Mountain School for Boys, and entered the following order and mittimus:
“ORDERED that the custody of S. D. be and it hereby is transferred to the diagnostic reception center, Youth Services Division of the Colorado State Department of Institutions, with the recommendation, that said person be placed forthwith at the Training School for Boys at the Colorado State Reformatory.”
The Department of Institutions disregarded the “recommendation” of the respondent court and again placed the juvenile in the Lookout Mountain School for Boys.
In response, by letter dated February 11, 1975, the petitioner, Gail D. Colvin, Director of the Adams County Juvenile Detention Center, informed the court that its recommended placement of the juvenile could not be followed since “the Department of Institutions has administratively determined the transfers of this type by Youth Services will not take place.”
On February 28, 1975, the trial court entered the order directing the petitioners to appear and show cause why they should not comply with the order and mittimus of February 7, 1975. The petitioners responded by filing this writ of prohibition seeking to prohibit the respondent court from proceeding further with the matter. We issued a rule to show cause. The rule is now made absolute.
The fundamental issue presented by this action is whether a district court, in a dispositional order, can direct the Department of Institutions to place a delinquent child in a specific institution or facility or whether such a determination lies within the discretion of the Department of Institutions. The provisions of the Colorado Children’s Code pertaining to disposition of delinquent children furnish the answer to this question.
Section 19-3-113, C.R.S. 1973 provides in relevant part:
“(1) If a child has been adjudicated as being delinquent, the court shall enter a decree of disposition containing one or more of the following provisions which the court finds appropriate:
“(a) The court may make any disposition, or combination of dispositions when appropriate, provided under 19-3-112(1), except that any delinquent child committed to the department of institutions may be placed in the Lookout Mountain School for Boys, the Mount View Girls’ School, or any other training school or any other facility, or other disposition may be made, which the department may determine as provided by law.
“(b) The court may recommend to the department of institutions that a delinquent child be placed in a training school established by section 19-8-116 when such delinquent child is sixteen years of age or older and it is the opinion of the court that it would be in the best interest of the *189 child and the public that he be placed in such facility.” (Emphasis added.)
The respondent has urged an interpretation of “recommend,” within the context of section 19-3-113, C.R.S. 1973, which would empower the court to compel the placement of a delinquent child at the training school for boys at the State Reformatory when ordered by the court. A literal reading of the explicit and unambiguous language of this statute leaves no room for such an interpretation. Harding v. Industrial Commission, 183 Colo. 52, 515 P.2d 95 (1973); Goldy v. Crane, 167 Colo. 44, 445 P.2d 212 (1968); City of Montrose v. Niles, 124 Colo. 535, 238 P.2d 875 (1952). When the terms of 19-3-113, C.R.S. 1973 are given their ordinary and generally accepted meaning, it appears that'the legislature has bestowed upon the Department of Institutions the exclusive power to place a delinquent in a particular facility once that child has been committed by the court to the department.
Other provisions of the Children’s Code buttress this conclusion. Section 19-8-103(2), C.R.S. 1973 provides that, after examination and evaluation, each child committed to the custody of the Department of Institutions
“shall then be placed by the department in the appropriate state institution or facility. . . .” (Emphasis added.)
Furthermore, with respect to placement in a training school, the applicable statutory provisions clearly envision such placement being made by the Department of Institutions rather than the court. Section 19-8-104(5), C.R.S. 1973; section 19-8-116,-C.R.S.-1973.
The Children’s Code places grave responsibilities upon juvenile judges to determine status — child in need of supervision or delinquent; it provides several types of facilities where the court can commit children in need of supervision and delinquents; and it also gives the judges power to commit or place on probation. Also, we note that the Children’s Code provides for the establishment of training schools within the Men’s Reformatory at Buena Vista, where a delinquent child, sixteen years or older, may be placed. Section 19-8-116, C.R.S. 1973.
The authority of the judge, however, is not commensurate with his responsibility when it comes to committing a delinquent boy to a training school. The Code permits him to “recommend” when it is the opinion of the court that “it would be in the best interest of the child and the public that he be placed in such facility.” This limited power to recommend frustrates the judge’s considered judgment as to what would be in the best interest of the child and the public. This, of course, is not a matter that can be remedied by either the juvenile court or this court.
The rule is made absolute.
MR. JUSTICE ERICKSON does not participate.